MORRIS SHEPPARD ARNOLD, Circuit Judge.
This is a suit to enjoin the enforcement of Mo.Rev.Stat. § 130.032.4 and § 130.032.7, which limit the amount of cash and in-kind contributions that political parties may give to a candidate for public office, and provide penalties for violating the limitations that the statutes set. The plaintiffs (a political party, candidate committees, and candidates for public office) asserted that the statutes at issue violated their rights of free speech under the first amendment. The district court refused to issue an injunction and this appeal ensued. We reverse and remand with directions to the district court to enter an injunction that is not inconsistent with this opinion.
I.
The complaint in this case set out a series of cash contributions that the Missouri Republican Party made to the other plaintiffs in this case, described the actions that the defendants (the members of the Missouri Ethics Commission and the Missouri attorney general) intended to take against the plaintiffs because the contributions exceeded those that Missouri law allows, and asked for an injunction against the enforcement of the statutes under which the defendants intended to proceed.
The plaintiffs argued to the district court that the monetary expenditures at issue here were not really contributions, as that term is regularly used in cases of this kind, but rather were coordinated expenditures made in conjunction and cooperation with the candidates and their committees. The district court rejected that construction of the facts, and held that there was no genuine factual dispute about the nature of the monetary expenditures involved, because the candidates retained control over how the money was to be spent. We agree with the district court.
We recognize that there will be cases in which the line between a contribution and a coordinated expenditure will be hard to draw, and we concede that that line may frequently be particularly difficult to discern when the ease involves money that passes from a party to one of its candidates. That is partly because, for reasons that will presently appear, we believe that it is often difficult to distinguish a party from its candidates at all. But here, as the district court noted, the candidates admitted that, although they discussed the use of the money with the party before it passed to them, they were nevertheless free to spend it as they saw fit. It is this freedom on the part of the candidates that provides them with the kind of independence that requires us to characterize the money that passed to them as contributions as a matter of law.
This characterization, as the parties recognize, is important to the case because, although the Supreme Court has not decided the precise issue before us, it has decided that contributions by individuals are subject to limitation, despite the first amendment interests at stake, see Buckley v. Valeo, 424 U.S. 1, 20-23, 96 S.Ct. 612, 46 L.Ed.2d 669 (1976) (per curiam), while independent expenditures by political parties are not, see Colorado Republican Federal Campaign Committee v. Federal Election Commission, 518 U.S. 604, 608, 116 S.Ct. 2309, 135 L.Ed.2d 795 (1996). Although these cases do not directly rule this one, since it falls somewhere between them, we nevertheless think that they provide guidance on the proper resolution of the questions raised. We believe that the recent case of Nixon v. Shrink Missouri Government PAC, 528 U.S. 377, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000), however, on which the defendants heavily rely, is of *1072 limited value in this respect, because, as we explain later, the fact that one of the plaintiffs in this case is a political party serves to distinguish it from Shrink Missouri Government PAC in a crucial way.
II.
The most important case for present purposes is Buckley, 424 U.S. at 20-21, 96 S.Ct. 612, which held that a limitation on individuals’ contributions to candidates for public office was constitutional because such a limitation imposed “only a marginal restriction upon the contributor’s ability to engage in free communication.” That was because, as the Supreme Court saw it, a “contribution serves as a general expression of support for the candidate and his views, but does not communicate the underlying basis for the support,” id. at 21, 96 S.Ct. 612. A limitation on contributions, the Court therefore concluded, “involves little direct restraint on ... political communication, for it permits the symbolic expression ... evidenced by a contribution,” id.
We think that these considerations simply do not carry the same force when the contributor is a political party. The main object of a political party is to elect its candidates to office, and, in large measure, the speech of its candidates is its own speech. While political parties employ various methods to speak, a principal way in which they express themselves is through the speech of their candidates. In fact, parties and their candidates are often virtual alter egos.
We are not suggesting that there is always an exact one-to-one correspondence between candidates and their parties. Candidates and parties have their observable differences, and there is truth in the old adage that a platform is something to stand on, not to run on: Candidates are not mere agents or mouthpieces. But parties seek to field a team and support it. Candidates are frequently, moreover, and with excellent reason, called their party’s standard-bearers, and they make frequent appeal to party principle; and in their interactions, candidates and parties influence each other and become more alike, so as to present a coordinated and common front. They are often, in other words, virtually indistinguishable from each other, and their identities are merged in a way that makes dealings between them more than merely transient symbiotic ones between separate and distinct entities.
Because of their unity of purpose, and the virtual identity of parties and their candidates, it is not easy to say, in the words of Buckley, 424 U.S. at 21, 96 S.Ct. 612, that a political party’s contribution “does not communicate the underlying basis for the support.” To the contrary, a party’s contribution provides an ideological endorsement and carries a philosophical imprimatur that an individual’s contribution does not, and thus it cannot properly be called a “contribution” in the same sense that the individual contributions at stake in Buckley were. Nor is a party’s contribution to its candidate, again in the words of Buckley, id., merely a “symbolic expression” of support; it is more like a substantive political statement than others’ contributions are. As we see it, all of this indicates that the first amendment rights at stake here are different from, and weightier than, those that were involved in Buckley. Cf. Federal Election Commission v. Colorado Republican Federal Campaign Committee, 213 F.3d 1221, 1227-28 (10th Cir.2000).
III.
The nature and character of political parties are relevant to another important aspect of our consideration of this case, namely, the kind of reason that the government must advance in order to justify an intrusion on first amendment rights. In Shrink Missouri Government PAC, 120 S.Ct. at 905-06, the Supreme Court held that preventing the corruption of candidates served as a sufficiently compelling reason to limit the size of contributions from individuals and political action committees. But, as Mr. Justice Thomas has *1073 observed, it is not easy to see how a party could “corrupt” one of its own candidates, since, on account of their general unity of purpose, they are committed, in the main, to the same aims and principles. See Colorado Republican Federal Campaign Committee, 518 U.S. at 646, 116 S.Ct. 2309 (opinion of Thomas, J.). As we see it, the threat that a political party will corrupt a candidate is not a very realistic one.
The defendants suggest alternatively that preventing the circumvention of the limits on individual contributions can serve to justify regulating the size of party contributions. See Buckley, 424 U.S. at 38, 96 S.Ct. 612; see also id. at 35-36, 96 S.Ct. 612. Buckley, however, upheld a limitation on the total amount that any one person could contribute on the ground that it would keep individuals from circumventing the limits on giving to any one candidate. See id. at 38, 96 S.Ct. 612. But here the challenged restriction is on the party’s giving, and the defendants seek to justify it on the ground that it would keep individuals from doing an end run around limits on their own giving. This scheme burdens the free speech rights of political parties in order to control the activities of someone else. This is something quite different from what Buckley approved.
Besides, the defendants admitted in their brief in this case that it would be illegal under Missouri law for an individual and a political party secretly to agree that the party would pass along the individual’s contribution to a candidate after that individual had already contributed the statutory maximum. Such a contribution, the defendants say, would be treated under Missouri law as a contribution by the individual, not the party. The defendants therefore already have a mechanism in place that deals with attempts by individuals to circumvent limits on their contributions by using a political party as a mere conduit. Cf. 2 U.S.C. § 441a(a)(8). Limitations on party spending might have an indirect attenuating effect on secret “earmarking” agreements between individuals and political parties because such agreements may be hard to detect and police directly, but we think that, that is too frail a rationale to justify burdening the substantial free speech rights of political parties that we have identified as being in jeopardy in this case. Cf. Colorado Republican Federal Campaign Committee, 213 F.3d at 1231-32.
The Supreme Court recently observed that, in deciding cases of this kind, it is important to keep in mind that the “quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised,” Shrink Missouri Government PAC, 120 S.Ct. at 906. In this case, the record is wholly devoid of any evidence that limiting parties’ campaign contributions will either reduce corruption or measurably decrease the number of occasions on which limitations on individuals’ campaign contributions are circumvented. Since, for the reasons indicated, we think that the justifications advanced for the statutory limitations relevant here are, in the context, novel and not particularly plausible, we hold that the challenged Missouri limitations on cash contributions are unconstitutional.
IV.
The district court refused' to allow the plaintiffs to file an amended complaint because it believed that the proposed amendment raised issues with respect to in-kind contributions that the original complaint did not raise. It is true that the amended complaint adverted to the likelihood that most, if not all, in-kind contributions would actually be coordinated expenditures rather than contributions in the purest sense; and it is also true, as the district court noted, that the original complaint emphasized the impending enforcement efforts by the defendants with respect only to cash contributions. But the original complaint did challenge Missouri’s statutory limits on in-kind contributions from parties, and the summary judgment materials contained evidence relating to those kinds *1074 of contributions. We therefore think that the case papers fairly raise the matter of in-kind contributions. Given our view of the case, namely, that the limitations on cash contributions are unconstitutional on their face, and given the fact that the defendants have advanced no basis on which, for constitutional purposes, the two kinds of contributions can be distinguished in the present factual context, we hold that Missouri’s limits on in-kind contributions also offend the first amendment.
V.
We therefore reverse the judgment of the district court and remand the case for the entry of an injunction that is not inconsistent with this opinion.